JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _Lehigh_
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _Philadelphia_
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Cianfrani Law
426 E Allegheny Avenue
Philadelphia, Pa 19134

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | | | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:
Violation of 14th Amendment Rights To Personal Bodily Integrity

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 12,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____     DOCKET NUMBER _____

DATE 12-17-25     SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: *IN THE CITY OF PhiLAdelPhiA*

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify):*_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases:  *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.N.K., a Minor | : | CIVIL ACTION |
| by and through his mother and natural | : | |
| guardian, Mileenu Thomas Hankerson | : | No: |
| 315 N 14th Street | : | |
| Allentown, Pa 18102 | : | |
| and | : | |
| DONALD THOMAS HANKERSON | : | |
| 315 N 14th Street | : | |
| Allentown, Pa 18102 | : | |
|     Plaintiffs | : | |
|   vs. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| 1515 Arch Street | : | |
| Philadelphia, Pa 19102 | : | |
|      Defendant | : | |

**INTRODUCTION**

1.    Minor Plaintiff A.N.K. suffered catastrophic burns, and Plaintiff Donald Hankerson

suffered serious burns in an April 2, 2024 fire in a Philadelphia rental rowhome, which did not

have working smoke alarms. Plaintiffs contend that the City of Philadelphia's (hereinafter The

City) fire safety laws and policies, which fail to provide residents of one and two family

dwellings with safeguards provided to residents of high-rise and multi-family buildings, were a

direct cause of Plaintifffs'injuries, in violation of their 14th Amendment rights to due process

law.

In Count I, Plaintiffs contend that The City's ordinances requiring Fire Code inspections

for high-rise and multi-family rental structures, while exempting one and two family rental

dwellings from inspections, caused Plaintiffs' injuries and violated their 14th Amendment rights to life and liberty in the form of personal bodily integrity.

In Count II, Plaintiffs contend that The City's policy, in the form of a custom, pattern and practice of excluding one and two family rental dwellings from Fire Code inspections, caused Plaintiffs' injuries and deprived them of their 14th Amendment Constitutional rights.

In Count III, Plaintiffs contend that The City's policy in the form of a custom, pattern and practice of not enforcing regulations which require landlords of one and two family dwellings to certify that they have installed smoke alarms, encouraged Plaintiffs' landlord to ignore fire-safety regulations, caused their injuries and deprived them of their 14th Amendment Constitutional rights.

In Count IV, Plaintiffs contend that The City's policy in the form of a custom, pattern and practice of tolerating fire safety code violations and not issuing code violation notices, when Fire Code violations were found in one and two family structures where fires occurred, encouraged Plaintiffs' landlord to ignore fire-safety regulations, caused their injuries and deprived them of their 14th Amendment Constitutional rights.

In Count V, Plaintiffs contend that the totality of The City's fire safety regulatory scheme, as set forth in its ordinances and policies, caused Plaintiffs' injuries and deprived them of their 14th Amendment Constitutional rights.

## JURISDICTION

2.    This action is brought pursuant to 42 USC, § 1983. The District Court has jurisdiction over Plaintiffs' Constitutional claims pursuant to 28 USC §§ 1331 and 1337.

**PARTIES**

3.      Plaintiff A.N.K., a Minor, brings this action by and through his mother and natural guardian, Mileenu Thomas Hankerson. Plaintiffs are citizens of the Commonwealth of Pennsylvania, residents of the Eastern District of Pennsylvania, and at all times relevant to this action, were present in Philadelphia, Pennsylvania.

4.      Plaintiffs currently reside at 315 N. 14th Street, Allentown, PA 18102.

5.      During the period from October 1, 2021 until April 2, 2024, the Plaintiffs and Mileenu Thomas Hankerson resided at 4307 Griscom Street, Philadelphia, PA.

6.      The City of Philadelphia is a municipality of the Commonwealth of Pennsylvania, which, at all times relevant to this Complaint, was acting by and under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City of Philadelphia.

7.      The Philadelphia Department of Licenses and Inspections (hereinafter L&I) is an administrative subdivision of The City. Defendant The City, acting through its Mayor and City Council, is the ultimate policymaking authority for all officially adopted policies and procedures implemented by employees of L&I.. The City delegates to the Commissioner of L&I the authority to develop, direct and implement policies for all L&I employees.

8.      L&I enforces building related Codes through inspections, licensing, permitting, code enforcement, and demolitions.

9.      The Philadelphia Fire Department (hereinafter Fire Department) is an administrative subdivision of The City. Defendant, acting through its Mayor and City Council, is the ultimate

policymaking authority for all officially adopted policies and procedures implemented by employees of the Fire Department. The City delegates to the Fire Department Commissioner the authority to develop, direct and implement policies for all Fire Department employees.

10.    The Philadelphia Fire Marshals Office (hereinafter FMO) is a unit within the Fire Department. FMO is responsible for enforcing fire safety regulations and conducting investigations to determine the causes of fires.

## FACTS

11.    On February 7, 2018, JR 888, LLC, a Pennsylvania limited liability corporation, became the record owner of the building and real property located at 4307 Griscom Street, Philadelphia PA 19124 ( hereinafter Griscom Street Property)

12.    From February 7, 2018  to the date of filing of this Complaint, JR 888, LLC has been the record owner of the Griscom Street Property.

13.    On or about April 2, 2024, and for many years prior thereto, a single-family, residential structure existed on the Griscom Street Property.

14.    At all times material hereto, pursuant to § 9-3902 of the Philadelphia Code, The City required  property owners, who rent out residential properties, to obtain a rental license, which must be renewed on a yearly basis.

15.    On April 26, 2018, JR 888, LLC obtained a rental license for the Griscom Street Property. Since April 26, 2018, the rental license has been renewed every year.

16.    On September 25, 2021, Milleenu Thomas Hankerson (nee Mileenu Ketphanh) and JR 888, LLC entered into a Residential Lease Agreement, in which JR 888, LLC agreed to lease the Griscom Street Property to Ms. Hankerson for a term of one (1) year commencing on October 1,

2021. At the expiration of the one-year term, the lease automatically renewed on a month-to-month basis.

## THE FIRE

17. On April 2, 2024, while the occupants slept, at approximately 1:40 AM, a fire started inside the Griscom Street Property.

18. No smoke alarms were heard.

19. No working smoke alarms were present.

20. Occupant Christina Ketphanh was sleeping on a recliner on the first floor. She woke up to find flames between a portable heater and the electrical outlet. As the room filled with smoke, she ran upstairs and alerted her sister, Mileenu Ketphanh Hankerson.

21. Mileenu Thomas Hankerson carried seven-month old Ith out through the bathroom window and onto the adjoining building's lower roof. Smoke continued to fill the first floor and began to encroach into the second floor hallway.

22. While Mileenu Thomas Hankerson was carrying Ith to safety, Plaintiff Donald Hankerson led nine (9) year old minor Plaintiff A.N.K down the stairs. In the smoke, visibility was nearly zero.

23. When Plaintiff Hankerson exited the front door, he saw that A.N.K. was not behind him. Plaintiff Hankerson re-entered the burning building, found A.N.K. and pulled him outside the burning structure. Plaintiff Hankerson learned that A.N.K. had lost his way due to the smoke and had fallen. Plaintiff Hankerson was physically burned when he re-entered the burning building to rescue minor Plaintiff A.N.K.

24.    As a result of the fire, Plaintiff Hankerson sustained serious burns to his body, and minor

Plaintiff A.N.K. sustained burns that will be debilitating to him for the rest of his life. The

injuries and damages suffered by Plaintiffs are set forth with greater particularity below.

## ADDITIONAL FACTS RELATING TO LIABILITY

25.    On  April 2, 2024, L&I issued only Violation Notice CF 2024-025809 to owner JR 888,

LLC, charging that the building was unsafe, vacant and open to trespass, in violation of § 108.2

of The Philadelphia Property Management Code.

26.    On April 2, 2024, L&I personnel cleaned and sealed the building on the Griscom Street

Property.

27.    On April 3, 2024, Violation Notice CF 2024-025809 was marked "COMPLIED."

28.    On April 2, 2024, the FMO initiated an investigation into the cause of the fire at the

Griscom Street Property.

29.    On December 10, 2024, the FMO released a report for the April 2, 2024 fire at the

Griscom Street Property. The report states, in pertinent part, "Cause of Ignition-Undetermined"

and "Presence of Detectors - None present."

30.   §704 of the Philadelphia Property Maintenance Code requires that all dwellings have

working smoke alarms.

31.    On and after December 10, 2024, The City had actual knowledge that on April 2, 2024,

no smoke alarm were present at the Griscom Street Property, and The City had actual knowledge

that the owner of the Griscom Street Property had violated  §704 of the Philadelphia Property

Maintenance Code by failing to have working smoke alarms.

32.    The City did not issue Code violation notices to the owner of the Griscom Street Property for failure to have working smoke alarms, or for any other fire safety related Code violation.

## DAMAGES

33.    As a direct and proximate result of the acts of The City, as set forth herein, minor Plaintiff A.N.K. suffered serious permanent injuries, including but not limited to, burns to seventy to seventy-nine percent (70% to 79%) of his body surface, including burns to his head, right wrist and hand, left wrist and hand, arms, legs and neck, as well as, amputation of digits of his hand, scaring throughout his body, impairment of motion throughout his body, including his legs, arms, hands, and fingers. Minor Plaintiff A.N.K. also suffered respiratory damage, requiring a tracheostomy, severe emotional and psychological harm, and damage to his nerves and nervous system, some or all of which are, or may be, permanent.

34.    As a direct and proximate result of the acts of The City, as set forth herein, minor Plaintiff A.N.K. has experienced extreme pain and suffering, loss of life's pleasures, and humiliation, and will continue, in the future, to suffer extreme pain, humiliation, and loss of life's pleasures, all to his great detriment and loss.

35.    As a direct and proximate result of the acts of The City, as set forth herein, minor Plaintiff A.N.K. was required to undergo multiple medical procedures in an effort to ameliorate the pain, suffering and harm to his body, and he will be required to undergo additional  medical procedures in the future, all to his detriment and loss.

36.    As a direct and proximate result of the acts of The City, as set forth herein, Millenu Thomas Hankerson has, and in the future will continue to, expend large sums of money for medicine and medical care, in an effort to effect a cure and/or ameliorate the pain and suffering,

psychological distress, and humiliation of minor Plaintiff A.N.K. and she will be required to expend large sums of money in the future, for which she hereby makes claim.

37.    As a direct and proximate result of the acts of The City, as set forth herein, in the future, minor Plaintiff A.N.K. will be required to expend large sums of money for medicine and medical care, in an effort to effect a cure and/or ameliorate his pain and suffering, psychological distress and humiliation, for which he hereby makes claim.

38.    As a direct and proximate result of the acts of The City, as set forth herein, in the future, minor Plaintiff A.N.K. will suffer a deprecation of earnings and earning power, all to his detriment and loss.

39.    As a direct and proximate result of the acts of The City, as set forth herein, Plaintiff Donald Thomas Hankerson suffered serious permanent injuries, including but not limited to, burns to twenty to twenty-nine percent (20% to 29%) of his body surface, including burns to his head, neck and right upper extremity, burns to his left upper extremity, burns to his back and chest, scaring to multiple body parts, and impairment of motion in multiple body areas, including his neck, back, arms, hands and fingers. Plaintiff Hankerson also suffered injury to his kidneys and inhalation injuries, including but not limited to, asthma. In addition, Plaintiff Hankerson suffered severe emotional and psychological harm and damage to his nerves and nervous system, some or all of which are, or may be, permanent.

40.    As a direct and proximate result of the acts of The City, as set forth herein, Plaintiff Hankerson has experienced extreme pain and suffering, loss of life's pleasures, and humiliation, and he will continue in the future to suffer extreme pain, humiliation, and loss of life's pleasures, all to his great detriment and loss.

41.    As a direct and proximate result of the acts of The City, as set forth herein, Plaintiff Hankerson was required to undergo multiple medical procedures in an effort to ameliorate the pain, suffering, harm and psychological distress to his body, and he will be required to undergo additional medical procedures in the future, all to his detriment and loss.

42.    As a direct and proximate result of the acts of The City, as set forth herein, Plaintiff Hankerson has, and in the future will continue, to expend large sums of money for medicine and medical care in an effort to effect a cure and/or ameliorate his pain and suffering, psychological distress and/or humiliation, and he will be required to expend large sums of money in the future, all to his detriment and loss.

43.    As a direct and proximate result of the acts of The City, as set forth herein, Plaintiff Hankerson has suffered a loss of earnings, all to his great detriment and loss.

## COUNT I

### PLAINTIFFS A.N.K., A MINOR AND DONALD HANKERSON vs THE CITY OF PHILADELPHIA 42 U.S.C. SECTION 1983 ( WRITTEN POLICY) THE PHILADELPHIA FIRE CODE EXCLUDES ONE AND TWO FAMILY RENTAL STRUCTURES FROM FIRE CODE INSPECTIONS IN VIOLATION OF PLAINTIFFS' 14TH AMENDMENT RIGHTS TO DUE PROCESS OF LAW

44.    Plaintiffs hereby incorporate the allegations of all preceding paragraphs as if the same have been set forth at length.

45.    On and prior to April 2, 2024, The City developed and maintained ordinances exhibiting deliberate indifference to the Constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiffs' rights.

46.     At all times material hereto, The City required landlords to meet standards contained in the Philadelphia Code, the Philadelphia Fire Code, the Property Maintenance Code, the Administrative Code, and the Zoning Code.

47.     At all times material hereto, § F-408.12 of the Philadelphia Fire Code required high-rise residential properties to be inspected by The City for fire code violations.

48.     At all times material hereto, The Philadelphia Fire Code at § F-901.6.4.8.1 required that all multi-family properties be inspected by qualified, third parties for Fire Code violations.

49.     The Philadelphia Code, the Philadelphia Fire Code, the Property Maintenance Code, the Administrative Code, and the Zoning Code do not require inspections of one and two family rental structures for compliance with fire safety regulations. No Philadelphia ordinance requires one and two family dwellings to be inspected for compliance with fire safety regulations.

50.     The City does not, and at all times material hereto, did not and require one and two family rental structures to be inspected for compliance with fire safety regulations and laws.

51.     At all times material hereto, the Commissioners of L&I produced a handbook entitled "Partners for Good Housing." The current version, which has been produced by the Commissioner of L&I since 2022, states "Annual certification of smoke alarms in one- and two-family dwellings is not required."

52.     The City's ordinances which require fire safety inspections for high-rise and multi-family buildings, while excluding one and two family residential structures from fire safety inspections, were in effect on and before April 2, 2024.

53.     On or about April 2, 2024, approximately eighty-two percent (82%) of The City's rental properties, representing forty-four percent (44%) of Philadelphia rental units, were one family structures, rather than multi-family buildings.

54.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that the presence of working smoke alarms would have alerted the residential occupants to the fire before the smoke grew in volume and density and would have allowed Plaintiffs to evacuate safely.

55.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that the failure to have working smoke alarms was a direct factual cause of Plaintiffs sustaining injuries.

56.    Based upon research and analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that The City's fire safety ordinances, Philadelphia Property Maintenance Code, Title 4, Subcode PM. § 704.2 and Philadelphia Fire Code Title 4, Subcode F, § F 907.2.11, which require working smoke alarms be present in all dwellings, demonstrates The City's recognition that smoke alarms prevent injuries and save lives. The Pennsylvania Code at 55 PA Code § 6400.110  also requires that every home have a minimum of one operable automatic smoke detector on each floor.

57.    During the period that Plaintiffs occupied the Griscom Street Property from October 1, 2021 to April 2, 2024, the one family residential structure was never inspected for compliance with Philadelphia fire safety regulations.

58.    On information and belief, Plaintiffs assert that from February 7, 2018, the date J.R. 888, LLC obtained the Griscom Street Property, until April 2, 2024, the one family residential structure was never inspected for compliance with Philadelphia fire safety regulations.

59.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that an inspection for compliance with Philadelphia fire safety regulations by The City, or by a

certified third-party, carried out between February 7, 2018 till April 2, 2024, would have disclosed that there were no working smoke alarms in The Griscom Street Property.

60.    A fire safety inspection conducted before April 2, 2024 would have forced landlord JR 888, LLC to install working smoke alarms, or be subject to Code violations and suspension of its rental license.

61.    Based upon analysis and research by an expert in the field of forensic fire investigation, Plaintiffs assert that inspections for compliance with fire safety regulations prevent injuries and save lives.

62.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that The City's failure to require a fire safety inspection of the Griscom Street Property was a direct cause of Plaintiffs' injuries.

63.    Based upon analysis and research by an expert in the field of forensic fire investigation, Plaintiffs assert that without inspections, The City cannot monitor and/or ensure that one and two family rental dwellings are equipped with a sufficient number of smoke alarms and that said rental dwellings are turned over to tenants with the sufficient number of smoke alarms in good working order.

64.    Based upon  analysis and research by an expert in the field of forensic fire investigation, Plaintiffs assert that many tenants of rental dwellings cannot determine when smoke alarms are not in good working order. Without inspections, The City cannot monitor and/or ensure that smoke alarms in one and two family rental dwellings are maintained in good working order.

65.    The City's requirement that High-rise and multi-family rental dwellings be inspected for fire safety compliance demonstrates the utility of inspections.

66.     On and before April 2, 2024, The City knew, or should have known, that the ordinances excluding one and two family rental structures from inspection for fire safety compliance placed occupants of one and two family rental dwellings at risk and were going to cause death or serious bodily injury to some occupants of those structures.

67.     In a published June 1, 2020 interview, then L&I Commissioner David Perri stated, "[F]ire code violations can be a matter of life or death."

68.     At all times material hereto, the City was deliberately indifferent to the risk and threat of death or serious bodily injury its ordinances, which excluded one and two family residential dwellings from inspection for fire code safety violations, put the Plaintiffs and other residents of one and two family rental structures.

69.     The City's ordinances found at § F-408.12 and § F-901.6.4.8.1 of the Philadelphia Fire Code which exempt one and two family rental structures from fire safety inspections caused Plaintiffs to incur the serious bodily injuries they suffered on April 2, 2024.

70.     The City's ordinances exempting one and two family rental structures from fire safety inspections caused the Plaintiffs to be deprived of their clearly established and well settled 14th Amendment Constitutional right to be free from loss of bodily integrity and personal security without due process of law.

71.     Minor Plaintiff A.N.K., by and through his mother and natural guardian Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson hereby claim damages for injuries as set forth above under 42 USC § 1983 against The City for violation of Plaintiffs' Constitutional rights under color of law.

WHEREFORE, Minor Plaintiff A.N.K., by and through his mother and natural guardian Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson request that this Court:

a.    Award compensatory damages to each of them against Defendant;

b.    Award costs of this action to each of them on Count I of the complaint;

c.    Award reasonable attorney's fees and costs to each of them on Count I of the complaint;

d.    Award such other and further relief as this Court may deem appropriate.

The Plaintiffs hereby demand a jury trial.

## COUNT II

**PLAINTIFFS A.N.K., A MINOR AND DONALD HANKERSON**
**vs THE CITY OF PHILADELPHIA**
**42 U.S.C. SECTION 1983**
**( POLICY ESTABLISHED BY PATTERN, PRACTICE AND CUSTOM )**
**THE CITY'S POLICY OF EXCLUDING ONE AND TWO FAMILY RENTAL**
**STRUCTURES FROM FIRE SAFETY INSPECTIONS VIOLATED PLAINTIFFS'**
**14TH AMENDMENT RIGHTS TO DUE PROCESS OF LAW**

72.    Plaintiffs hereby incorporate the allegations of all preceding paragraphs as if the same have been set forth at length.

73.    On or about April 2, 2024, and for a long time prior thereto, it was policy and practice of The City to conduct fire safety inspections of all high-rise properties and to require third-party inspections of mult-family properties, while excluding one and two family rental structures from inspections.

74.    At all times material hereto, The City's Commissioner of L&I had the policymaking authority to make decisions in their official capacity regarding the type of buildings which were subject to fire safety inspections.

75.    David Perri was Commissioner of L&I from 2016 until January 2021. He was succeeded by Ralph DiPietro, who remained as L&I Commissioner on and after April 2, 2024.

76.     At all times material hereto, David Perri and his successor, Ralph Di Pietro, in their official capacity as Commissioner of L&I maintained and enforced the policy that one and two family rental dwellings were excluded from fire safety inspections.

77.     In a published June 1, 2020 interview, then L&I Commissioner David Perri admitted that it was the policy of The City to require fire safety inspections of all high-rise and multi-family properties, while excluding one and two family rental structures from said required inspections.

78.     From 2016 to the time of filing of this Complaint, every Philadelphia Commissioner of L&I maintained the practice and policy of excluding one and two family residential structures from fire safety inspections.

79.     The City's practice and policy of excluding one and two family residential structures from fire safety inspection was in effect on and before April 2, 2024.

80.     At all times material hereto, the City's policy of exempting one and two family dwellings from fire safety inspections was set forth in writings and openly articulated by L&I Commissioners.

81.     At all times material hereto, the Commissioner of L&I produced a handbook entitled "Partners for Good Housing." The current version, which has been produced by the Commissioner of L&I since 2022, states "Annual certification of smoke alarms in one -and two family dwellings is not required."

82.     At all times material hereto, in compliance with the policy of exempting one and two family dwellings from fire safety inspections, L&I employees excluded one and two family rental structures from said inspections.

83.    At all times material hereto, The City's policy of exempting one and two family dwellings from fire safety inspections was so engrained, established and followed, that said policy had the force of law.

84.    During the period Plaintiffs resided at the Griscom Street Property, from October 1, 2021 to April 2, 2024, the one-family dwelling was never inspected for compliance with Philadelphia fire safety regulations.

85.    The City's policy excluding one and two family residential structures from fire safety inspections was in effect on and before April 2, 2024.

86.    On or about April 2, 2024, approximately eighty-two percent (82%) of the City's rental properties, representing forty-four percent (44%) of rental units, were single family dwellings.

87.    Based upon  analysis by an expert in the field of forensic fire investigation, Plaintiffs assert  that the presence of working smoke alarms would have alerted the residents of the Griscom Street Property to the fire before the smoke grew in volume and density and would have allowed Plaintiffs to evacuate safely.

88.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that the failure to have working smoke alarms was a direct factual cause of Plaintiffs sustaining injuries.

89.    Based upon research and analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that The City's fire safety ordinances requiring that smoke detectors be present in all dwellings demonstrate The City's recognition that smoke alarms prevent injuries and save lives.

90.    During the period that plaintiffs occupied the Griscom Street Property from October 1, 2021 to April 2, 2024, the one family rental dwelling was never inspected for compliance with Philadelphia fire safety regulations.

91.    On information and belief, Plaintiffs assert that from February 7, 2018, the date time J.R. 888, LLC first obtained the Griscom Street Property, until October 1, 2021, the house on the Property was never inspected for compliance with Philadelphia fire safety regulations.

92.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that an inspection for compliance with fire safety regulations by The City, or by a certified third-party, carried out between October 1, 2021 and April 2, 2024, would have disclosed that there were no working smoke alarms in the Griscom Street Property.

93.    A fire safety inspection conducted before April 2, 2024 would have forced landlord JR 888, LLC to install working smoke alarms, or be subject to code violations and suspension of its rental license.

94.    Based upon analysis and research by an expert in the field of forensic fire investigation, Plaintiffs assert that inspections for compliance with fire safety regulations prevent injuries and save lives.

95.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that The City's failure to require a fire safety inspection of the Griscom Street Property was a direct cause of Plaintiffs' injuries.

96.    Based upon analysis and research by an expert in the field of forensic fire investigation, Plaintiffs assert that without inspections, The City cannot monitor and/or ensure that one and two family rentals are equipped with a sufficient number of smoke alarms and that said rental units are turned over to tenants with smoke alarms that are in good working order.

97.     Based upon analysis and research by an expert in the field of forensic fire investigation,
Plaintiffs assert that many tenants of rental units cannot determine when smoke alarms are not in
working order. Without  inspections, The City cannot monitor and/or ensure that smoke alarms in
one and two family rental units are maintained in good working order.

98.     The City's requirement that High-Rise and multi-family rental units be inspected for fire
safety code compliance demonstrates the utility of inspections.

99.     On and before April 2, 2024,The City knew, or should have known, that the policy of
excluding one and two family rental structures from inspection for fire code violations placed
occupants of one and two family rental structures at risk and was going to cause death or serious
bodily injury to some occupants of those structures.

100.    In a published June 1, 2020 interview, then L&I Commissioner David Perri stated that
"[F]ire code violations can be a matter of life or death."

101.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs
assert that the presence of working smoke alarms would have alerted residents of the Griscomb
Street Property to the fire before the smoke grew in volume and density and would have allowed
Plaintiffs to evacuate safely.

102.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs
assert that The City's failure to require a fire safety inspection of the Griscom Street Property
was a direct cause of Plaintiffs' injuries.

103.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs
assert that The City's fire safety ordinances requiring that smoke detectors be present in all
dwellings demonstrate a recognition that smoke alarms prevent injuries and save lives.

104.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that an inspection for compliance with fire safety regulations by The City, or by a certified third-party, carried out between October 1, 2021 and April 2, 2024, would have disclosed that there were no working smoke alarms in the Griscom Street Property.

105.    A fire safety inspection conducted before April 2, 2024 would have forced landlord JR 888, LLC to install working smoke alarms, or be subject to code violations and suspension of its rental license.

106.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that The City's failure to require a fire safety inspection of the Griscom Street Property was a direct cause of Plaintiffs' injuries.

107.    Based upon analysis and research by an expert in the field of forensic fire investigation, Plaintiffs assert that inspections for compliance with fire safety regulations prevent injuries and save lives.

108.    Based upon analysis and research by an expert in the field of forensic fire investigation, Plaintiffs assert that The City's failure to inspect the Griscom Street Property caused Plaintiffs to suffer the serious injuries they sustained on April 2, 2024.

109.    At all times material hereto, The City knew that the policy and practice of excluding one and two family rental structures from inspection for fire code violations placed occupants of one and two family rental structures at risk of death or serious bodily injury.

110.    At all times material hereto, the City was deliberately indifferent to the risk and threat of death or serious bodily injury its ordinances, which excluded one and two family residential dwellings from inspection for fire code safety violations, put the Plaintiffs and other residents of one and two family rental structures.

111.    The City's practice and policy of exempting one and two family rental structures from fire safety inspections caused the Plaintiffs to suffer the severe injuries they incurred on April 2, 2024.

112.    The City's policy of exempting one and two family rental structures from fire safety inspections caused Plaintiffs to be deprived of their 14th Amendment right to be free from loss of bodily integrity and personal security without due process of law.

113.    The actions of The City, as heretofore alleged, violated the clearly established and well settled Constitutional rights of Plaintiffs to be free from loss of bodily integrity and personal security without due process of law.

114.    Minor Plaintiff A.N.K., by and through his mother and natural guardian Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson hereby claim damages for injuries as set forth above under 42 USC Section 1983 against Defendant The City for violation of Plaintiffs' Constitutional rights under color of law.

WHEREFORE,  Minor Plaintiff A.N.K., by and through his mother and natural guardian, Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson request that this Court:

a.    Award compensatory damages to each Plaintiff against Defendant;
b.    Award costs of this action to each Plaintiffs on Count II of the complaint;
c.    Award reasonable attorney's fees and costs to each Plaintiff on Count II of the complaint;
d.    Award such other and further relief as this Court may deem appropriate.

The  Plaintiffs hereby demand a jury trial.


## COUNT  III

### PLAINTIFFS A.N.K., A MINOR AND DONALD HANKERSON
### vs  CITY OF PHILADELPHIA
### 42 U.S.C. SECTION 1983

**(POLICY ESTABLISHED BY PATTERN, PRACTICE AND CUSTOM)**
**THE CITY'S POLICY OF TOLERATING FIRE SAFETY CODE VIOLATIONS BY**
**LANDLORDS OF ONE AND TWO FAMILY RENTAL STRUCTURES VIOLATED**
**PLAINTIFFS' 14TH AMENDMENT RIGHTS**

115.    Plaintiffs hereby incorporate the allegations of all preceding paragraphs as if the same

have been set forth at length.

116.    In lieu of inspections, The City requires landlords of one and two family rental structures

to certify that their properties are safe, habitable and have working smoke alarms.

117.    The requirements for landlords of one and two family rental structures are found in

§ 9-3903(1)(a) and § 9-3903 (2)(b)(.3) of the Philadelphia Code which require that within sixty

(60) days of the inception of a lease agreement, landlords must provide tenants with a Certificate

of Rental Suitability issued by The City and a copy of The City issued "Philadelphia For Good

Partners Handbook."

118.    At all times material hereto, the Commissioners of L&I had the policymaking authority to

establish systems, practices, procedures and policies designed to ensure that at the inception of a

lease agreement, landlords provide tenants with a Certificate of Rental Suitability issued by The

City and a copy of The City issued "Philadelphia For Good Partners Handbook."

119.    At all times material hereto and over a period of many years, the Commissioners of L&I

failed to implement an effective system, procedure, practice or policy designed to ensure that

landlords of one and two family dwellings provided tenants at the inception of a lease agreement

with a Certificate of Rental Suitability issued by The City and  a copy of The City issued

"Philadelphia For Good Partners Handbook."

120.    At all times material hereto, the Commissioners of L&I had the policymaking authority to

make decisions in their official capacity for all L&I employees regarding the issuance of code

violation notices, including notices for violations of fire safety regulations in the City of
Philadelphia.

121.    At all times material hereto, the Commissioners of L&I established, maintained and
condoned the pattern, practice and custom that L&I employees tolerated violations of Sections
9-3903(1)(a) and 9-3903(2)(b)(.3) of the Philadelphia Code and did not issue code violation
notices or, in any other way, enforce the fire safety requirements of Sections 9-3903(1)(a) and
9-3903(2)(b)(.3) of the Philadelphia Code.

122.    At all times material hereto, The City's policy of not issuing code violation notices to
landlords who violated the fire safety requirements of Sections 9-3903(1)(a) and 9-3903(2)(b)(.3)
of the Philadelphia Code by failing to provide tenants at the inception of a lease agreement with
a Certificate of Rental Suitability and a copy of the City issued Philadelphia For Good Partners
Handbook was so widespread, acknowledged and long practiced that it was an official policy of
The City.

123.    At the inception of the tenancy of Millenu Thomas Hankerson on October 1, 2021,
landlord JR 888, LLC did not apply to The City for the issuance of a Certificate of Rental
Suitability for the Griscom Street Property. During the entire period that Ms. Hankerson and her
family, including Plaintiffs, occupied the Griscom Street Property, the landlord JR 888, LLC did
not apply for a Certificate of Rental Suitability.

124.    The City did not issue a Certificate of Rental Suitability for the Griscom Street Property.

125.    JR 888, LLC did not provide Ms. Hankerson with a Certificate of Rental Suitability or a
copy of the City issued "Philadelphia For Good Partners Handbook."

126.    At all times material hereto, The City had actual knowledge that the landlord/ owner of
the Griscom Street Property was in violation of Sections 9-3903(1)(a) and  9-3903(2)(b)(.3) of

the Philadelphia Code because it did not provide to the tenant a Certificate of Rental Suitability issued by L&I no more than sixty (60) days prior to the inception of the Lease.

127.    The failure of the Commissioners of L&I to implement an effective procedure, system, practice or policy designed to ensure that landlords of one and two family dwellings complied with the requirements Sections 9-3903(1)(a) and 9-3903 (2)(b)(.3) of the Philadelphia Code demonstrated The City's deliberate indifference to the health and safety of Plaintiffs and all other occupants one and two family rental structures in the City of Philadelphia.

128.    The City's policy of tolerating and not issuing code violation notices to landlords who did not provide tenants a Certificate of Rental Suitability issued by L&I demonstrated The City's deliberate indifference to the health and safety of Plaintiffs and all other occupants of one and two family rental structures in the City of Philadelphia.

129.    At all times material hereto, The City's policy of tolerating and not issuing code violation notices to landlords who did not provide tenants a Certificate of Rental Suitability issued by L&I induced and encouraged landlords of one and two family rental structures, including Plaintiffs' landlord, JR 888, LLC, to ignore fire safety code requirements.

130.    The City's toleration of JR 888, LLC's code violations and The City's failure to issue a code violation notice to JR 888, LLC for failing to provide the tenant a Certificate of Rental Suitability issued by L&I demonstrates that The City's had in force a policy of tolerating fire safety code violations in one and two family dwellings and not issuing code violation notices to landlords of of one and two family dwellings who failed to comply with fire safety code requirements.

131.    The City's failure to issue a code violation notice to JR 888, LLC for failing to provide the tenant a Certificate of Rental Suitability issued by L&I ratified and condoned JR 888, LLC's

violation of fire safety regulations and demonstrated The City's deliberate indifference to the safety and well being of Plaintiffs herein.

132.    Because The City did not require inspection of one and two family dwellings for compliance with fire safety regulations, its policy of tolerating and not issuing violation notices to landlords of one and two family dwellings, who did not comply with fire safety regulations, put the safety and well being of occupants of those buildings at risk of serious bodily injury and death.

133.    On and after April 2, 2024, The City had actual knowledge that the house at the Griscom Street Property did not have working smoke alarms.

134.    The City did not  issue code violation notices to JR 888, LLC for its failure to have working smoke alarms.

135.    At all times material hereto, The City was deliberately indifferent to the risk and threat of death and serious bodily injury to Plaintiffs, and similarly situated persons, that its policy of tolerating violations of fire safety regulations by landlords of one and two family residential structures caused.

136.    At all times material hereto, with no inspection requirement, no enforcement of the requirement to certify that landlords complied with fire safety regulations, and no penalty for failing to provide smoke alarms and otherwise comply with fire safety regulations, landlords of one and two family rental structures suffered no consequences for renting and maintaining properties with no working smoke alarms.

137.    At all times material hereto, because there is no inspection requirement, no enforcement of the requirement to certify that landlords complied with fire safety regulations, and no penalties imposed for failure to have working smoke alarms, landlords of one and two family rental

structures knew that they would suffer no consequences for renting properties with no working smoke alarms.

138.    Based upon  analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that they experienced the fire without the benefit of the early warning a smoke alarm would have provided.

139.    The lack of working smoke alarms and The City's policy of tolerating fire safety code violations by landlords of one and two family dwellings directly caused Plaintiffs to suffer the serious bodily injuries they incurred on April 2, 2024.

140.    The City's policy of allowing landlords of one and two family residential structures to violate Sections 9-3903(1)(a) and 9-3903(2)(b)(.3) of The Philadelphia Code, caused Plaintiffs to be deprived of their 14th Amendment right to be free from loss of bodily integrity and personal security without due process of law.

141.    The actions of The City, as heretofore alleged, violated the clearly established and well settled constitutional right of  Plaintiffs to be free from loss of bodily integrity and personal security without due process of law.

142.    Minor Plaintiff A.N.K., by and through his mother and natural guardian Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson hereby claim damages for injuries as set forth above under 42 USC Section 1983 against The City for violation of Plaintiffs' Constitutional rights under color of law.

WHEREFORE,  Minor Plaintiff A.N.K., by and through his mother and natural guardian, Mileenu Thomas Hankerson and Plaintiff Donald Hankerson request that this Court:

    a.    Award compensatory damages to  each of them against defendant;
    b.    Award costs of this action to  each of them on Count III of the  complaint;
    c.    Award reasonable attorney's fees and costs to each of them on Count III of the complaint;

   d.   Award such other and further relief as this Court may deem appropriate.

The Plaintiffs hereby demand a jury trial.

**COUNT IV**

**PLAINTIFFS A.N.K., A MINOR AND DONALD HANKERSON**
**vs THE CITY OF PHILADELPHIA**
**42 U.S.C. SECTION 1983**
**(POLICY ESTABLISHED BY CUSTOM, PATTERN AND PRACTICE )**
**THE CITY'S POLICY OF TOLERATING FIRE SAFETY VIOLATIONS IN ONE AND**
**TWO FAMILY RESIDENTIAL STRUCTURES WHERE A FIRE HAD OCCURRED**
**CAUSED PLAINTIFFS TO SUFFER CONSTITUTIONAL DEPRIVATIONS**

143.   Plaintiffs hereby incorporate the allegations of all preceding paragraphs as if the same have been set forth at length..

144.   At all times material hereto, the Fire Department Commissioner had the policymaking authority to make decisions in his/her official capacity for all Fire Department employees, including employees of the FMO. The Fire Department Commissioner's authority encompassed all Fire Department policies, including policies governing communicating and transmitting the results of fire investigations to other governmental agencies, including L&I.

145.   At all times material hereto, The City's Commissioner of L&I had the policymaking authority to make decisions in his/her official capacity for all L&I employees regarding the issuance of code violation notices, including notices for violations of fire safety regulations in the City of Philadelphia.

146.   At all times material hereto, The City's Commissioner of L&I had the policymaking authority to make decisions in his/her official capacity for all L&I employees regarding communications with Fire Department employees, including policies governing the receipt and transmission of results of fire investigations.

147.    At all times material hereto, The City had a policy, through custom and practice, of not issuing code violation notices when fire safety violations existed in one and two family residential structures where a fire had occurred.

148.    At all times material hereto, The City's policy of not issuing code violation notices, when fire safety violations existed in one and two family residential structures where a fire had occurred, was so widespread, acknowledged and long-practiced that it constituted an official policy and had the force of law.

149.    At all times material hereto, The City's policy of not issuing code violation notices, when fire safety violations existed in one and two family residential structures where a fire had occurred, was known to the Commissioner of the Fire Department.

150.    At all times material hereto, The City's policy of not issuing code violation notices, when fire safety violations existed in one and two family residential structures where a fire had occurred, was known to and approved by the Commissioner of L&I.

151.    At all times material hereto, the Fire Department Commissioner and the Commissioner of L&I tolerated, accepted, condoned, and ratified the City's policy of not issuing code violation notices when fire safety violations existed in one and two family residential structures where a fire had occurred.

152.    The City's long standing, widespread policy of tolerating fire safety violations in one and two family residential structures where a fire had occurred is demonstrated by The City's failure to issue code violation notices for violation of fire safety regulations at the locations and on the dates listed below. In each of these instances, although no smoke alarms were present, no code violation notices were not issued:

1) 5948 Spruce Street - January 15, 2023
2) 2923 Wilder Street - September 8, 2023
3) 3445 N. Hutchinson Street - September 12, 2023
4) 6735 N. 18th Street- November 15, 2023
5) 6048 N. 12th Street - December 11, 2023
6) 816 W. Tioga Street - December 19, 2023
7) 2756 N. Bonsall Street - December 24, 2023

## NO SMOKE ALARMS WERE PRESENT AT THE GRISCOM STREET PROPERTY AND NO FIRE SAFETY CODE VIOLATION NOTICES WERE ISSUED

153.    On April 2, 2024, the Griscom Street Property did not have any working smoke detectors.

154.    On April 2, 2024, the FMO initiated an investigation into the cause of the fire at the Griscom Street Property.

154.    On April 2, 2024,  the Department of L&I issued only Violation Notice CF 2024-025809 to owner JR 888, LLC, charging that the Griscom Street Property was unsafe, vacant and open to trespass in violation of Section 108.2 of the Philadelphia Property Management Code.

155.    On April 2, 2024,  L&I personnel cleaned and sealed the building on the Griscom Street Property, and on April 3, 2024, Code Violation CF 2024-025809 was marked "COMPLIED."

156.    On and after April 2, 2024, The City had actual knowledge that a fire had occurred at the Griscom Street Property.

157.    On and after April 2, 2024, The City had actual knowledge that at the time of the fire, the Griscom Street Property had been tenant-occupied.

158.    On December 10, 2024, the FMO released its Report for the April 2, 2024 fire at the Griscom Street Property, which states in pertinent part: "Cause of Ignition- Undetermined" and "Presence of Detectors - None present."

159.    On and after December 10, 2024, The City had actual knowledge that on April 2, 2024, no working smoke detectors were present at the Griscom Street Property and that the owner of

the Griscom Street Property violated fire safety requirements of § F-1103.8 of the Fire Code and

§704 of the Philadelphia Property Management Code by failing to have working smoke alarms.

160.    The City did not issue Code violation notices to the owner of the Griscom Street Property

for failure to have working smoke detectors, or for any other fire safety code violation.

161.    The City's failure to issue Code violation notices to the owner of the Griscom Street

Property for failure to have working smoke alarms, or for any other fire safety code violation,

was in conformance with policy of tolerating Code violations and not issuingCode violations

notices to landlords of one and two family dwellings who violated fire safety regulations.

162.    The City's failure to issue Code violation notices to the owner of the Griscom Street

Property for failure to have working smoke alarms, or for any other fire safety code violation,

demonstrated The City's toleration of serious fire safety violations and its approval and

ratification of the policy of tolerating, and not issuing, Code violations to landlords of one and

two family dwellings who violated fire safety regulations.

163.    At all times material hereto, The City was deliberately indifferent to the risk of its policy

of tolerating fire safety code violations, and not issuing Code violations notices to landlords of

one and two family dwellings who violated fire safety regulations, which put Plaintiffs and other

occupants of one and two family dwellings at risk.

164.    At all times material hereto, The City's policy, of tolerating fire safety code violations

and not issuing violation notices after a fire had occurred in a one or two family rental structure

where fire code violations existed, induced and encouraged landlords of such structures,

including Plaintiff's landlord, JR 888, LLC, to ignore fire safety code requirements, including

the requirement for smoke alarms.

165.    At all times material hereto, The City's policy and practice, of tolerating fire safety code violations and not issuing Code violation notices after a fire had occurred in a one or two family rental structure in which fire code violations existed, caused Plaintiff's landlord, JR 888, LLC, to ignore fire safety code requirements, including the requirement that working smoke alarms be provided.

166.    At all times material hereto, J.R. 888, LLC knew that its failure to have working smoke alarms at the Griscom Street Property would be tolerated by The City and that no penalties, of any kind, would be imposed for this and other violations of fire safety regulations.

167.    By failing to issue a Code violation notice to JR 888, LLC, for failure to have working smoke alarms, The City ratified JR 888, LLC's violation of law and demonstrated the City's deliberate indifference to the safety and well-being of Plaintiffs herein.

168.    By failing to issue a Code violation notice to JR 888, LLC, for failure to have working smoke alarms, The City demonstrated its deliberate indifference to the safety and well being of Plaintiffs, and The City ratified its denial to Plaintiffs of their 14th Amendment rights to be secure in the health and safety of their persons.

169.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that injuries were caused by the lack of smoke alarms.

170.    Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that the policy, of tolerating fire safety code violations and not issuing violation notices to non-compliant landlords, directly caused JR 888, LLC to ignore the requirement for smoke alarms and forced the Plaintiffs to experience the fire, without the benefit of the early warning smoke alarms would have provided.

171.   Based upon analysis by an expert in the field of forensic fire investigation, Plaintiffs assert that The City's policy of tolerance of fire safety code violations, and its policy of not issuing fire safety code violation notices, caused Plaintiffs to suffer the serious injuries they sustained on April 2, 2024.

172.   The City's policy and practice of tolerating fire safety code violations and not issuing Code violation notices, after a fire had occurred in a one or two family rental structure in which fire code violations existed, caused Plaintiffs to suffer the injuries and damages heretofore alleged.

173.   The City's policy and practice of tolerating fire safety code violations and not issuing Code violation notices, after a fire had occurred in a one or two family rental structure in which fire code violations existed, caused Plaintiffs to be deprived of their 14th Amendment rights to be free from loss of bodily integrity and personal security, without due process of law.

174.   The actions of The City, as heretofore alleged, violated the clearly established and well settled Constitutional rights of Plaintiffs to be free from loss of bodily integrity and personal security, without due process of law.

175.   Minor Plaintiff A.N.K., by and through his mother and natural guardian Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson hereby claim damages for injuries as set forth above under 42 USC Section 1983 against Defendant The City for violation of Plaintiffs' Constitutional rights under color of law.

WHEREFORE,  Minor Plaintiff A.N.K., by and through his mother and natural guardian, Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson request that this Court:

      a.   Award compensatory damages to each Plaintiff  against defendant;
      b.   Award costs of this action to each  Plaintiff on Count IV of the  complaint;
      c.   Award reasonable attorney's fees and costs to each Plaintiff on Count IV of the complaint;

      d.    Award such other and further relief as this Court may deem appropriate.

The Plaintiffs hereby demand a jury trial.


### COUNT V

### PLAINTIFFS A.N.K., A MINOR AND DONALD HANKERSON
### vs CITY OF PHILADELPHIA
### 42 U.S.C. SECTION 1983
### THE TOTALITY OF CITY'S FIRE SAFETY REGULATORY AND ENFORCEMENT SCHEME AS SET FORTH IN ORDINANCES AND POLICIES DEPRIVED PLAINTIFFS OF THEIR 14TH AMENDMENT RIGHTS

176.    Plaintiffs hereby incorporate the allegations of all preceding paragraphs as if the same

have been set forth at length.

177.    At all times material hereto, The City's fire safety regulatory and enforcement scheme

consisted of the following:

      a.    ordinances requiring fire code inspections for high rise and multi-family
      rental structures, which exempted one and two family rental structures from
      inspections;
      b.    a policy of excluding one and two family rental structures from fire code
      inspections;
      c.    a policy of not enforcing regulations which require landlords of one and
      two family dwellings to certify that they have installed smoke alarms;  and,
      d.    a policy of tolerating fire safety code violations, and not issuing code
      violation notices, when fire code violations were found in one and two  family
      structures where fires occurred.

178.    At all times material hereto, The City knew and was deliberately indifferent to the risk of

death or serious injury that its fire safety regulatory scheme, which includes the ordinances and

policies set forth above, which put Plaintiffs and other occupants of one and two family

dwellings at risk.

179.    The City's fire safety regulatory scheme, which includes the ordinances and policies set forth above, caused Plaintiffs to suffer the injuries and damages heretofore alleged.

180.    The actions of The City, as heretofore alleged, violated the clearly established and well-settled Constitutional rights of Plaintiffs to be free from loss of bodily integrity and personal security, without due process of law.

181.    Minor Plaintiff A.N.K., by and through his mother and natural guardian Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson hereby claim damages for injuries as set forth above under 42 USC Section 1983 against Defendant The City for violation of Plaintiffs' Constitutional rights under color of law.

    WHEREFORE,  Minor Plaintiff A.N.K., by and through his mother and natural guardian, Mileenu Thomas Hankerson, and Plaintiff Donald Hankerson request that this Court:

    a.    Award compensatory damages to each Plaintiff against defendant;
    b.    Award costs of this action to each  Plaintiff on Count IV of the  complaint;
    c.    Award reasonable attorney's fees and costs to each Plaintiff on Count IV of the complaint;
    d.    Award such other and further relief as this Court may deem appropriate.

The  Plaintiffs hereby demand a jury trial.

BY: _____
    ANTHONY L. CIANFRANI, ESQUIRE
    **CIANFRANI LAW LLC**
    SUITE 409, 426 E ALLEGHENY AVE
    PHILADELPHIA PA 19137
    P (215) 922-1241 F (215) 207-9692
    ANTHONY.CIANFRANI@GMAIL.COM